**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| **ANTOINETTE MCCRARY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 5:25-cv-1060-CLS** |
| | ) |
| **TRUIST BANK,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM OPINION AND JUDGMENT**

Antoinette McCrary sues defendant Truist Bank, and its attorneys, McCalla Raymer Leibert Pierce, LLP, and Burr & Forman, LLP, alleging eleven counts relating to Truist Bank's initiation of foreclosure proceedings against McCrary's house. Doc. no. 20. Defendants have moved to dismiss her complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because it is based on frivolous sovereign-citizen legal theories,[1] and because it does not adequately allege any

---

[1] A close review of the amended complaint reveals that the claims asserted by plaintiff Antoinette McCrary rest on the spurious notion that defendants do not have standing to foreclose on her house, and that she is entitled to all the damages and remedies stemming from that theory, including remedies under the Uniform Commercial Code, damages from various unrelated federal statutes, and above all else, cancellation of her obligation under the promissory note securing her mortgage. Doc. no. 20. Theories like that one are commonly invoked by adherents of the so-called "sovereign-citizen movement." *See, e.g., Propser v. Catamount Properties 2018, LLC*, 2025 WL 2889230, at *7–8 (N.D. Ga. Aug. 4, 2025) (noting that plaintiff's assertions that "[defendant] lacked standing to foreclose . . . falsified documents, denied their Fifth Amendment due process rights, and violated Georgia's DUPA and RICO statutes," are akin to a "ploy rooted in a sovereign-citizen-like theory that somehow enables plaintiffs to unilaterally satisfy their debt through legal maneuvering rather than payment."); *Steven Macarthur-Brooks Estate v. Moreno*, 2025 WL

claims for which relief may be granted. The court agrees, and finds that defendants'

motion is due to be granted.

## FACTS

When Lorenza and Antoinette McCrary stopped paying their home mortgage,

Truist Bank instituted foreclosure proceedings. *See* Doc. no. 20-1, at 71. In response,

Dana Poole — a person not licensed as an attorney in Alabama — began sending

letters to Truist noting that the Bank had failed to respond to the McCrarys' "formal

Debt Validation Notice, Revocation of Signature, Notice of Unconscionable

Contract and Demand for Authority to Respondents, and request for lawful

presentment." Doc. no. 1-1, at 12. Poole's letters to the bank were signed as

"Attorney-in-Fact for Lorenza & Antonette [*sic*] McCrary, Without Prejudice — All

Rights Reserved, *nunc pro tunc, ab initio*." Doc. no. 1-1, at 56. Such strategies and

phrases are typical of the legal theories asserted by so-called "sovereign citizens."

---

30390, at *1 (S.D. Fla. Jan. 6, 2025) (observing that sovereign-citizen types of claims are often presented with "a gallimaufry of nonsensical legal conclusions—inapposite legal maxims jumbled together with insubstantial claims, seasoned liberally with citations to the Uniform Commercial Code").

Sovereign-citizen legal theories have been universally rejected by Circuit Courts across the country, including the United States Court of Appeals for the Eleventh Circuit. *See, e.g., United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (observing that courts have "summarily rejected" sovereign citizens' legal theories as frivolous); *Henry v. Fernandez-Rundle*, 773 F. App'x. 596, 597 (11th Cir. 2019) (*per curiam*) (affirming the dismissal of a sovereign citizen's complaint as frivolous); *See also, e.g., United States v. Benabe*, 654 F.3d 753, 761–67 (7th Cir. 2011) (describing the conduct of another "sovereign citizen" and collecting cases rejecting the group's claims as frivolous).

Truist Bank did not respond to Dana Pool in a manner the McCrarys considered adequate, so they, acting through their "Attorney-in-Fact," filed suit against the bank and its attorneys, McCalla Raymer Leibert Pierce, LLP, in the Circuit Court of Madison County, Alabama, alleging breach of fiduciary duty, due process violations, and quiet title. Doc. no. 1-1, at 12, 14. They further asked for both a temporary restraining order and a preliminary injunction preventing the foreclosure, as well as declaratory relief. *Id.* at 13-16.

Defendants then removed the state-court action to this court under federal-question jurisdiction, because the plaintiffs had based their claims, in part, on the Truth in Lending Act, the Fair Debt Collection Practices Act, and the Real Estate Settlement Procedures Act, all of which are federal statutes. Doc. no. 1, at 5. Plaintiffs did not file a motion to remand, but they amended their complaint a month after removal. Doc. no. 20. In the amended complaint, Lorenza McCrary is not named as a party, and Dana Poole is not named as the "attorney-in-fact," thereby leaving Antoinette McCrary as the sole plaintiff, acting in a *pro se* capacity. Doc. no. 20. Additionally, the complaint added Burr & Forman, LLP—Truist Bank's attorneys in this action—as an additional defendant.

Antoinette McCrary's amended complaint alleges eleven counts against defendants Truist Bank, McCalla Raymer Leibert Pierce, LLP, and Burr & Forman, LLP:

- "Declaratory relief lack of standing to foreclose" under 28 U.S.C. § 2201 and Alabama Code § 7-3-301 (Count I);

- A "Permanent Injunction" (Count II);

- "Unauthorized disclosure of private information" under 5 U.S.C. § 522a and Alabama Common Law (Count III);

- "False statements to federal & state agencies" under 18 U.S.C. § 1001 (Count IV);

- "Federal impersonation" under 18 U.S.C. § 912 (Count V);

- "Violations of the Fair Debt Collection Practices Act" under 15 U.S.C. § 1692 (Count VI);

- "Violations of the Truth in Lending Act" under 15 U.S.C. § 1601, and the "Real Estate Settlement Procedures Act" under 12 U.S.C. § 2601 (Count VII);

- "Due process violations" under 42 U.S.C. § 1983 (Count VIII);

- "Wrongful foreclosure & slander of title" under Alabama Code § 6-6-540 and Alabama Common Law (Count IX);

- "Quiet title" under Alabama Code § 6-6-540 (Count X);

- "Civil conspiracy to deprive rights" under 42 U.S.C. § 1985(2–3) (Count XI).

Doc. no. 20. All those claims are frivolous, and the amended complaint fails to state a claim upon which relief may be granted.

## LEGAL STANDARDS

When reviewing a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-movant." *Jastram v. NextEra Energy, Inc.*, 161 F.4th 693, 706 (11th Cir. 2025). However, the Court "must parse out legal assertions disguised as factual allegations." *Id.* And "[a]fter discarding those conclusory allegations," the court "must decide whether the well-pleaded facts state a 'plausible claim for relief,' as opposed to one that is merely 'conceivable.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009)). That requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Additionally, courts must liberally construe *pro se* pleadings in favor of *pro se* litigants, who don't have the benefit of a legal education. *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). However, such leniency "does not give a court license to serve as *de facto* counsel for the party," or to "rewrite an otherwise deficient pleading in order to sustain an action." *Id.*

## DISCUSSION

The court will initially address as a group Counts I, II, IX, and X of the amended complaint, because they are based on the same frivolous legal theory that defendants do not possess standing to institute foreclosure proceedings. The opinion

5

then will address Counts III, IV, V, and VIII, because those claims are either based on statutes that do not provide McCrary with a private right of action, or otherwise do not apply to the defendants. Finally, the court will address claims VI, VII, and XI individually, because each presents some form of a legal argument.

**A.    Declaratory relief for the lack of standing to foreclose (Count I), permanent injunction (Count II), wrongful foreclosure and slander of title (Count IX), and quiet title (Count X)**

McCrary first argues that defendants do not have standing under Alabama Code 7-3-301 to foreclose on her house because defendants do not possess an "original, wet-ink promissory note." Doc. no. 20, at 7–10. As a result, McCrary alleges that defendants have commenced wrongful foreclosure proceedings, and she is asking for quiet title on the house, as well as injunctive relief to prevent any future foreclosure—collectively accounting for Counts I, II, IX, and X. Doc no. 20, at 8–12, 27–32. Defendants respond that Counts I, II, IX, and X all rely on the spurious "show-me-the-note" legal theory to establish standing. Doc. no. 21, at 10–13.

Alabama is a non-judicial foreclosure state, and it allows any entity to foreclose on a piece of property if it holds a mortgage containing a power of sale. Ala. Code § 35-10-12. Alabama courts have repeatedly rejected the theory that the party seeking foreclosure must produce the "original," or "wet-ink" version of the note and mortgage. *See, e.g.*, *Douglas v. Troy Bank & Trust Co.*, 122 So. 3d 181, 182–84 (Ala. Civ. App. 2012); *Summerlin v. Shellpoint Mortgage Services*, 165 F.

Supp.3d 1099, 1111 (N.D. Ala. 2016); *Graveling v. Castle Mortgage Co.*, 631 F. App'x. 690, 697 (11th Cir. 2015).

Thus, McCrary's theory that defendants lack standing to initiate foreclosure proceedings because they do not possess the "original, wet-ink promissory note" is frivolous. In addition, defendants have provided evidence (clear and complete copies) of McCrary's mortgage and promissory note. Doc. nos. 21-1 & 21-2. Thus, defendants can institute foreclose proceedings on McCrary's home, and McCrary has not stated a claim upon which relief may be granted for wrongful foreclosure, quiet title, or injunctive relief related to the foreclosure.

**B.    Unauthorized disclosure of private information (Count III), false statements (Count IV), federal impersonation (Count V), and due process violations (Count VIII)**

McCrary next asserts claims against defendants for the unauthorized disclosure of private information under the Administrative Procedures Act, for false statements and federal impersonation under 18 U.S.C. § 912 and 18 U.S.C. § 1001, and for due process violations under 42 U.S.C. § 1983 in Counts III, IV, V, and VIII. Defendants respond that the authorities undergirding McCrary's claims in those counts are generally not applicable, because the statutes either don't give individuals a private right of action, or they do not apply to the defendants. Doc. no. 21, at 13–16.

The Administrative Procedures Act only applies to federal agencies, and it does not provide an individual with a right of action against a private bank. *See* 5 U.S.C. § 551(1); *see also Sealey v. Stidham*, 2015 WL 5083992, *8–9 (M.D. Ala. Aug. 27, 2015). Similarly, a private individual has no right to enforce federal criminal statutes through civil actions. *Bass Angler Sportsman Society v. U.S. Steel Corp.*, 324 F. Supp. 412, 415 (S.D. Ala. 1971). In addition, federal courts have concluded that neither 18 U.S.C. § 912 nor 18 U.S.C. § 1001 provide a private right of action to a plaintiff. *Frison v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003) (18 U.S.C. § 912); *Lee v. United States Agency for International Development*, 859 F.3d 74, 78 (D.C. Cir. 2017) (18 U.S.C. § 1001).

Finally, while 42 U.S.C. § 1983 provides a private cause of action against state actors acting under the color of state law, *see, e.g.*, *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992), it only rarely provides a basis for an action against a private party. To prove that a private party was acting under "color of state law," a plaintiff must show that the private entity performed a state action under one of three tests: the public function test; the state compulsion test; or the nexus joint action test. None of those tests are satisfied here. *Id.*

All of McCrary's claims based on the statutes discussed in this section are due to be dismissed. McCrary cannot assert an unauthorized disclosure of private

8

information claim under the Administrative Procedures Act.[2]  She cannot assert a private action for false statements and federal impersonation under 18 U.S.C. § 912 or 18 U.S.C. § 1001. And, McCrary does not allege that defendants were acting under the color of state law *via* the public functions test, the state compulsion test, or the nexus joint action test. Thus, she cannot assert a claim for due process violations under § 1983 against the defendants.

**C.    Violation of the Fair Debt Collection Practices Act Under 15 U.S.C. § 1692 (Count VI)**

McCrary alleges that defendants violated the Fair Debt Collection Practices Act ("FDCPA") because they "[f]alsely claimed to be in lawful possession of the note without presenting proof of holder status," "[m]isrepresented the nature of foreclosure proceedings and their authority to enforce," and "[u]sed unfair means to collect the debt." Doc. no. 20, at 19–21. Defendants respond that they are not "debt collectors" within the meaning of the FDCPA, and McCrary's FDCPA claims do not apply to them. Doc. no. 21, at 18–20.

---

[2] To the extent that McCrary relies on the Alabama common law for the unauthorized disclosure of private information, that claim also fails. There are four actionable claims under Alabama law for the invasion of privacy: "(1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *S.B. v. Saint James Sch.*, 959 So. 2d 72, 90 (Ala. 2006). But McCrary merely parrots the cause of action for invasion of privacy and provides only conclusory support for her contention that defendants' actions constituted the invasion of privacy. That is insufficient, and thus, McCrary's claim for invasion of privacy under Alabama law fails.

"In order to state a plausible FDCPA claim under § 1692, a plaintiff must allege . . . (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012) (alterations supplied). Significantly, "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property, . . . falls outside the ambit of the FDCPA." *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x. 458, 460–61 (11th Cir. 2009) (*per curiam*).

Here, Truist Bank was acting as a mortgage company foreclosing on McCrary's real-property mortgage, and its acts are not covered by the FDCPA. Likewise, the other defendants were either acting as Truist Bank's agent, or were otherwise not performing any debt collection whatsoever, meaning the FDCPA is inapplicable to all the defendants. McCrary's claims, accordingly, fail.

**D.    Truth in Lending Act Under 15 U.S.C. § 1601 and Real Estate Settlement Procedures Act Under 12 U.S.C. § 2601 (Count VII)**

In Count VII, McCrary asserts that defendants violated the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA") because they "issued a combined consumer dispute package addressed to Defendant Truist Bank" that contained a "Notice of Rescission under TILA, citing material misrepresentations and nondisclosure," and a "Qualified Written Request (QWR) under RESPA, seeking loan validation, payoff calculation, origination chain,

servicing details and proof of lawful enforcement rights." Doc. no. 20, at 23. Defendants respond that a rescission under TILA does not apply to McCrary's mortgage, because the Act does not apply to residential mortgages. Doc. no. 21, at 20–23. Additionally, defendants argue that RESPA does not apply, because McCrary's qualified written request was for information not related to the servicing of her mortgage. *Id.*

TILA does not allow for the rescission of a residential mortgage transaction. 15 U.S.C. § 1635(e)(1); *Cooper v. Countrywide Home Loans*, 724 F. App'x. 741, 743 (11th Cir. 2018). A residential mortgage transaction occurs when "a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such [a] dwelling." 15 U.S.C. § 1602(x).

RESPA requires that a loan servicer respond to a qualified written request from a borrower who seeks "information relating to the *servicing* of such loan." 12 U.S.C. § 2605(e) (emphasis supplied). Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3) (alterations supplied). The servicer need not reply to a request asking for information unrelated to the servicing of the

11

loan. *See, e.g.*, *Liggion v. Branch Banking and Trust*, 2011 WL 3759832 (N.D. Ga. Aug. 24, 2011); *MorEquity, Inc. v. Naeem*, 118 F. Supp.2d 885, 901 (N.D. Ill. 2000).

Here, McCrary's claims under both TILA and RESPA are frivolous. First, TILA does not allow for the rescission on a person's home mortgage. The property in dispute for this case is McCrary's "primary residence." Doc. no. 20, at 10. Thus, McCrary's claims under TILA are not cognizable.

Second, McCrary's qualified written request asked for information not related to the servicing of her home loan. Rather, she sought "loan validation, payoff calculation, origination chain, servicing details, and proof of lawful enforcement rights." Doc. no. 20, at 23. Defendants need not have responded to anything in that request except for the payoff calculation and servicing details. And to the extent they did not do so, McCrary provides nothing but conclusory allegations that defendants failed to fulfill the statutory requirement. Thus, the claims alleged in Count VII are due to be denied.

## E.    Civil Conspiracy Under 42 U.S.C. § 1985 (Count XI)

Finally, McCrary alleges that Truist Bank and its attorneys, McCalla Raymer Leibert Pierce, LLP, and Burr & Forman, LLP, engaged in a civil conspiracy to deprive her of rights under 42 U.S.C. § 1985(2) and § 1985(3). Doc. no. 20, at 32–34.

To prove a claim under 42 U.S.C. § 1985(3), a plaintiff must show the existence of a conspiracy that was created for the purpose of "depriving . . . any person or class of persons of the equal protections of the laws, or of equal privileges and immunities under laws." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (ellipsis supplied). Further, the plaintiff must prove that the conspiracy acted in furtherance of depriving a person of their rights, and that the person was injured due to the conspiracy. *Id.*

Likewise, to prove a claim for civil conspiracy under 42 U.S.C. § 1985(2), the plaintiff must prove a conspiracy that sought to injure a person for "lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the law." *Chavis v. Clayton County School District*, 300 F.3d 1288, 1293–94 (11th Cir. 2002).

Beyond mere conclusory allegations based upon the sovereign-citizen theories concerning her foreclosure, McCrary has provided no allegations that the defendants sought to deprive her of her rights or of the equal protections of the law, as required by both subsections of § 1985. Accordingly, she fails to state a claim for which relief may be granted under 42 U.S.C. § 1985.

## CONCLUSION

Defendants' motion to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), doc. no. 21, is therefore due to be, and it hereby is,

**GRANTED**, and all claims are **DISMISSED WITH PREJUDICE**. Plaintiff's motion for sanctions, doc. no. 34, is **DENIED AS MOOT**. The Clerk is **DIRECTED** to close this case. Costs are taxed to plaintiff.

    **DONE** and **ORDERED** this 26th day of March, 2026.

_____
Senior United States District Judge

14